**AUTO–OWNERS INSURANCE COMPANY, etc., Plaintiff,**

**v.**

**Danny TOOLE, etc., et al., Defendants.**

**Civil Action No. 95–T–1153–S.**

United States District Court,
M.D. Alabama,
Southern Division.

Nov. 27, 1996.

William C. Carn, III, Lee & McInish, Dothan, AL, for Auto–Owners Insurance Company.

Gary L. Weaver, Powell, Peek & Weaver, Andalusia, AL, for Danny Toole.

J.E. Sawyer, Jr., Enterprise, AL, for Sherry Lawson, Jimmy R. Parnell, Ruby M. Hill, Daniel Manrique, Glenda Manrique, Henry C. Jones, Kenneth A. Smith, Samuel L. Young, Mary Young, Michelle Smith, Sara Dale Jackson, Ruby C. Flowers, Rosalind S. Jackson, Dale McLaughlin, Jeannette McLaughlin, Bertha Johnson, Shelby Mims, Tammy Mims, Angela L. Deetion, Francia

Morales, Wilbert K. Maschmeier, Lamar Asbel, Carla Asbel, Brenda Guilford, Freddie Austin, Daniel Smith, Clarence L. Chaplin, Polly A. Chaplin.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

Pursuant to the Declaratory Judgment Act, 28 U.S.C.A. § 2201, plaintiff Auto–Owners Insurance Company filed this action against defendant Danny Toole, d/b/a Rucker Auto Sales, seeking a declaration that it has no duty, under a commercial and garage liability insurance policy, to defend or indemnify Toole in an underlying state court action, *Lawson v. Mercury Finance, Inc.,* civil action no. 95–380–H, pending in the Circuit Court of Houston County, Alabama. In the underlying lawsuit, the state plaintiffs claim, among other things, that Toole committed fraud and breach of contract in connection with the sale and financing of motor vehicles. Toole seeks coverage from Auto–Owners under commercial and garage liability policies in effect at the time the claims arose. Auto–Owners has properly invoked the diversity-of-citizenship jurisdiction of this court. 28 U.S.C.A. § 1332.

By agreement of the parties, this lawsuit has been submitted to the court for final judgment on the pleadings, the jointly-submitted evidentiary record, and the briefs of each of the parties. For the reasons that follow, the court grants declaratory relief in Auto–Owners's favor with respect to its duty to defend Toole and denies such relief as premature with respect to its duty to indemnify.

1. In the state court complaint, the state plaintiffs named Rucker Auto Sales, rather than Toole, as a defendant. Evidentiary record filed on July 19, 1996, exhibit A.

2. *Id.*

3. *Id.* at 4.

4. *Id.* at 1–15.

5. *Id.*

## I. BACKGROUND

On April 21, 1995, Sherry Lawson and 27 others filed a lawsuit in state court against Toole[1] and others asserting fraud, breach of contract, and other state-law claims in connection with the sale and financing of motor vehicles.[2] The state plaintiffs claim that Mercury Finance Company instituted a "reserve system" in which it retained between $500 and $1,000 of the amount financed in each automobile loan.[3] The state plaintiffs allege that this system amounted to fraudulent concealment of the true amount of the loans and associated fees.[4] In addition, they allege that Toole and others, acting as agents of Mercury, sold cars to them and failed to disclose that the purchase price of the vehicles had been inflated to include the reserve amount.[5]

Auto–Owners is currently defending Toole in the state court action. Under reservation of right, Auto–Owners has undertaken Toole's defense pursuant to commercial liability and garage liability insurance policies with him. Auto–Owners contends that, under the terms of the policies, it is obligated neither to defend nor to indemnify Toole in the underlying state action.[6]

Toole contracted with Auto–Owners to provide liability coverage for himself, d/b/a Rucker Auto Sales.[7] Auto–Owners issued two successive policies to Toole.[8] The provisions of the policies are identical except for the coverage period. The policies provide that Auto–Owners would indemnify and defend Toole for amounts that the business was legally obligated to pay for "bodily injury" or "property damage" due to an "occurrence."[9] The policies, however, contain a number of exclusions, some of which the court will explain later.

6. Auto–Owners's federal complaint for declaratory relief filed September 1, 1995.

7. Evidentiary record filed on July 19, 1996, exhibit D.

8. The effective dates of each policy were January 28, 1994, through January 28, 1995, and January 28, 1995, through January 28, 1996. *Id.*

9. *Id.* at 26.

Auto–Owners filed the present lawsuit in federal court on September 1, 1995, seeking a determination of its obligation to defend and indemnify Toole in the underlying state action.[10]

## II. DUTY TO DEFEND

Auto–Owners argues that it has no duty to defend Toole in the underlying state-court action because the allegations in the state-court complaint fall outside the scope of the insurance policies' coverage. An insurance company's duty to defend its insured from suit is determined by the language of the insurance policy and by the allegations in the complaint filed against the insured. *Alfa Mutual Ins. Co. v. Morrison,* 613 So.2d 381, 382 (Ala.1993); *Ladner & Co. v. Southern Guar. Ins. Co.,* 347 So.2d 100, 102 (Ala.1977). "If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured." *Chandler v. Alabama Mun. Ins. Co.,* 585 So.2d 1365, 1367 (Ala.1991) (internal quotations omitted). Where the allegations of the complaint show that no injury alleged is within the coverage of the policy, however, or where the allegations are ambiguous, "the court is not limited to the bare allegations of the complaint ... but may also look to facts which may be proved by admissible evidence." *Id.; see also Perkins v. Hartford Ins. Group,* 932 F.2d 1392 (11th Cir.1991).

Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, *see Colonial Life & Accident Ins. Co. v. Collins,* 280 Ala. 373, 194 So.2d 532, 535 (1967), while the insurer bears the burden of proving the applicability of any policy exclusion. *See U.S. Fidelity & Guar. Co. v. Armstrong,* 479 So.2d 1164, 1168 (Ala.1985). If an insurance policy is ambiguous in its terms, the policy must be construed liberally in favor of the insured, and exceptions to cover-

age must be interpreted as narrowly as possible in order to provide maximum coverage to the insured. *Altiere v. Blue Cross & Blue Shield,* 551 So.2d 290, 292 (Ala.1989). However, if there is no ambiguity, an insurance contract must be enforced as written, and courts should not defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties. *Id.*

Lawson and the other state plaintiffs allege the following in the underlying state-court action: [11]

*Count One:* Toole and the other state defendants fraudulently failed to disclose reserves on loans made to Lawson and the other state plaintiff purchasers even though they had a legal duty to disclose all financing arrangements.

*Count Two:* Toole and the other state defendants fraudulently failed to reveal that Mercury required the car dealerships to charge the state plaintiffs "unreasonably high" premiums to satisfy the loan reserve requirements.[12]

*Count Three:* Toole and the other state defendants fraudulently failed to reveal that the state plaintiffs were purchasing credit life insurance policies.

*Count Four:* Mercury Finance Company and the other state defendants forced the state plaintiffs to purchase unnecessary insurance for their vehicles, and Toole and the other state defendants fraudulently failed to disclose that they were charging the state plaintiff purchasers an unreasonably high premium for the coverage.

*Count Five:* Mercury Finance failed to give proper notice before repossessing the state plaintiffs' vehicles, and Mercury converted the vehicles and their contents.

*Count Six:* Toole and the other state defendants violated the Alabama Deceptive Trade Practices Act, 1975 Ala.Code § 8–19–1.

---

10. In its complaint, Auto–Owners has included the plaintiffs in the underlying state court-action as defendants. Auto–Owners's amended complaint for declaratory relief filed May 16, 1996.

11. Evidentiary record filed on July 19, 1996, exhibit A.

12. Toole has objected to the characterization of the premium as unreasonably high.

*Count Seven:* Toole and the other state defendants "willfully, wantonly, or negligently performed the acts in COUNT ONE through COUNT SIX" of the complaint.

*Count Eight:* Toole and the other state defendants fraudulently misrepresented the amount of the loans in loan documents.

*Count Nine:* Toole and the other state defendants entered a scheme to defraud Lawson and other purchasers by failing to disclose all charges, discounts, and percentage spreads after having represented to them that full disclosure had been made. Toole and the other state defendants acted with actual malice and as part of a pattern and practice of fraud and other intentional wrongful conduct.

*Count Ten:* Mercury Finance's acts were unconscionable.

*Count Eleven:* Toole and the other state defendants committed breach of contract.

### A.

█ In this federal lawsuit for declaratory relief, Auto–Owners claims that it is not obligated to defend counts one, two, three, four, eight, and nine because they all sound in fraud. The court agrees. Auto–Owners's policies with Toole expressly provide that they do not apply to "any action or claim arising out of fraud, misrepresentation, deceit, suppression, or concealment of fact, whether intentional, unintentional, innocent, [or] negligent ... but not limited to an action or lawsuit based on direct liability, vicarious liability or agency principles."[13] These counts—one, two, three, four, eight, and nine—are therefore excluded from coverage.

### B.

█ Auto–Owners claims that it is not obligated to defend count five because Toole is not a defendant to that count. The court agrees. Rule 8 of the Alabama Rules of Civil Procedure provides that "[a] pleading which sets forth a claim for relief ... shall contain ... (1) a short plain statement of the claim showing that the pleader is entitled for relief and (2) a demand for judgment for the relief that the plaintiff seeks."[14] It is evident that Toole is not a defendant to count five, as the count contains allegations directed against only Mercury Finance, and the state plaintiffs seek to recover from only Mercury.

### C.

Similarly, in count six, although the state plaintiffs allege that "Defendants violated the Alabama Deceptive Trade Practices Act,"[15] in their demand for judgment, the state plaintiffs seek relief only against Mercury Finance.[16] Therefore, count six, according to the requirements of Rule 8, does not assert a claim for relief against Toole. Toole acknowledges this fact in his response to Auto–Owners's request for declaratory judgment: "Count Six does not state a claim against Rucker/Toole."[17] Auto–Owners has no duty to defend Toole against count six.

### D.

█ Count seven incorporates counts one through six but adds the allegation that Toole and the other state defendants acted "willfully, wantonly, or negligently." For the reasons given in connection with counts one through six, Auto–Owners is not obligated to defend count seven. The "willfully, wantonly, or negligently" language does not warrant a different outcome.

### E.

Auto–Owners contends that it is not obligated to defend counts ten and eleven either. The court agrees.

█ Although count ten charges only Mercury with "unconscionable conduct,"

13. Endorsement 59218. Evidentiary record filed on July 19, 1996, exhibit D at 39.

14. The court has turned to the Alabama Rules of Civil Procedure because those are the rules that apply to the underlying state lawsuit.

15. Evidentiary record filed on July 19, 1996, exhibit A at 10.

16. *Id.*

17. Defendants' brief filed on August 9, 1996, at 4.

Lawson and the other state plaintiffs seek relief against all the defendants including Toole. Therefore, the court must address whether Auto–Owners is obligated to defend Toole on count ten. Alabama law defines an unconscionable contract as one " 'such as no man in his sense and not under delusion would make on the one hand, and as no honest man would accept on the other.' " *Layne v. Garner*, 612 So.2d 404, 408 (Ala. 1992) (quoting *Hume v. United States*, 132 U.S. 406, 410, 10 S.Ct. 134, 136, 33 L.Ed. 393 (1889)). "Although Alabama law lacks an explicit standard for determining whether a contract or contractual provision is unconscionable, case law reveals that four factors are important in making this determination.... In addition to finding that one party was unsophisticated and/or uneducated, a court should ask (1) whether there was an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract." *Id.; see also* Tex.Bus. & Com.Code § 17.45(5) (defining an unconscionable act is one that "to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of a consumer to a grossly unfair degree" or one that "results in a gross disparity between the value received and consideration paid in a transaction"); Kan.Stat.Ann. § 50–627 (listing factors that court should consider in determining whether act was unconscionable). It is therefore apparent that the term unconscionable has broad play in a commercial or private setting in connection with a contract or otherwise in the nongratuitous exchange of goods or services.

Count eleven charges Toole with breach of contract. Count eleven and count ten are therefore alike in that they both relate to contractual obligations. They differ in that the basis for the claim in count ten is that the contract between the parties is unconscionable, and the basis for claim in count eleven is that the contract has simply been breached.

Auto–Owners argues that there is no coverage for claims in counts ten and eleven because the events giving rise to the claims do not fall within the policies' coverage definitions. As stated, the policies provide that Auto–Owners would defend Toole for amounts that the business was legally obligated to pay for "bodily injury" or "property damage" due to an "occurrence." [18] The policies offer the standard definition of an "occurrence" within the context of insurance law: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [19] Auto–Owners maintains that, because the claims at issue arise out of contractual disputes, they are not occurrences.

■ There is almost no Alabama law addressing if and when events giving rise to a contract dispute fall within the standard definition of occurrence. In *Reliance v. Wyatt, Inc.*, 540 So.2d 688, 691 (Ala.1988), the Alabama Supreme Court held that a breach of contract was not an occurrence, stating

"The portion of Essex's complaint with which we are concerned in this appeal is predicated upon the following alleged breach of contract: 'Wyatt failed to procure liability insurance as required ... [and this] failure constitutes a breach of the lease agreement, and Essex has, and will, suffer damages as a direct, foreseeable, and proximate result of said breach.' The breach of contract was the failure to procure liability insurance. This is not an 'occurrence' that results in bodily injury or property damage. Batson's injury may go to the issue of damages sustained by this breach of contract, but it is not the 'occurrence' that causes the breach of contract. The contract had been breached, with or without Batson's injury. The 'occurrence' in this case is the breach of contract rather than the bodily injury to Batson. We conclude that no coverage exists for the breach of contract, because the breach did not constitute an 'occurrence' that resulted in bodily injury or property damage under the definitions within the policy, which was

---

**18.** Evidentiary record filed on July 19, 1996, exhibit D at 26.

**19.** *Id.* at 34.

necessary to bring such claim within the policy coverage."

To be honest, this court cannot lift from these comments any overall principle or principles that might guide the court in resolving the issue presented in the instant case.

"Other jurisdictions have held that a breach of contract does not constitute an occurrence under liability policies that require an accident for an occurrence." *City of Burlington v. National Union Fire Ins. Co.,* 163 Vt. 124, 655 A.2d 719, 722 (1994). *See also Jakobson Shipyard, Inc. v. Aetna Casualty & Sur. Co.,* 961 F.2d 387, 389 (2d Cir. 1992) (no accident where insured shipbuilder provided tug boat with defective steering mechanism contrary to contract specifications); *Pace Constr. Co. v. United States Fidelity & Guar. Ins. Co.,* 934 F.2d 177, 180 (8th Cir.1991) (no accident where insured subcontractor breached contractual duty to procure insurance for contractor); *Magic Valley Potato Shippers v. Continental Ins.,* 112 Idaho 1073, 739 P.2d 372, 375–76 (1987) (no accident where buyer failed to pay for and pick up goods in violation of existing contract).

Nevertheless, this court declines to adopt any broad holding that claims sounding in contract are not occurrences. Rather, the court agrees with the Supreme Court of Vermont that, in determining whether there is coverage, the court should look to the specific "kind of ... claim" being asserted, regardless as to whether it is labeled a contract claim, a tort claim, or whatever, and the "purpose of the general liability policy" from which coverage is sought. *City of Burlington,* 655 A.2d at 722.

■ Here, counts ten and eleven are based on the sale and financing of motor vehicles. As stated, the counts essentially assert claims arising out of a business dispute, albeit in the context of a consumer contractual transaction. The court believes that the following comments best explain why the events giving rise to the counts should not be viewed as occurrences: "To allow indemnification under the facts presented here would have the effect of making the insurer a sort of silent business partner subject to great risk in the economic venture without any prospects of sharing in the economic benefit. The expansion of the scope of the insurer's liability would be enormous without corresponding compensation. There is simply no reason to expect that such a liability would be covered under a comprehensive liability policy which has, as its genesis, the purpose of protecting an individual or entity from liability for essentially accidental injury to another individual, or property damage to another's possessions, even if, perhaps, the coverage of the policy has been expanded to cover other non-bodily injuries that sound in tort." *Id.* (quoting *Toombs NJ Inc. v. Aetna Casualty & Sur. Co.,* 404 Pa.Super. 471, 591 A.2d 304, 306 (1991)). *See also* Robert J. Franco, *Insurance Coverage for Faulty Workmanship Claims under Commercial General Liability Policies,* 30 Tort & Ins.L.J. 785, 789 (1995) (citing *U.S. Fidelity & Guarantee v. Advance Roofing & Supply Co.* 163 Ariz. 476, 788 P.2d 1227, 1231 (App.1989)).

Similarly here, this court would distort the purpose of the liability insurance policies in this case by applying them to the consumer transactions underlying the claims in counts ten and eleven against Toole. It is apparent from a reading of the policies between Auto–Owners and Toole that they were not intended to cover business transactions and business ventures, of a consumer nature or of a another kind. To allow coverage here would have the effect of transforming Auto–Owners into "a sort of silent business partner" to the consumer transactions between the state plaintiffs and Toole. *Id.* This would be improper because "[t]he expansion of the scope of the insurer's liability would be enormous without corresponding compensation. There is simply no reason to expect that such a liability would be covered under a comprehensive liability policy which has, as its genesis, the purpose of protecting an individual or entity from liability for essentially accidental injury to another individual, or property damage to another's possessions." *Id.*

■ In any event, the court also agrees with Auto–Owners that the claims in counts ten and eleven do not involve "property damage" within the meaning of the policies.

"Property damage" means "[p]hysical injury to tangible property, including all resulting loss of use of that property ... [or] []loss of use of tangible property that is not physically injured."[20] The Alabama Supreme Court has accepted the following definitions of "tangible property" and "intangible property":

" 'Tangible property is that which may be felt or touched; such property as may be seen, weighed, measured, and estimated by the physical senses; that which is visible and corporeal; having substance and body as contrasted with incorporeal property rights such as franchises, choses in action, copyrights, the circulation of a newspaper, annuities and the like. Tangible property must necessarily be corporeal, but it may be either real or personal.

" 'Intangible property is property which has no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, bonds, promissory notes, and franchises. Intangible property is quite different in nature from corporeal property, and there is an obvious distinction between tangible property and intangible property. Intangible property is held secretly; that is, it cannot be readily located, and there is no method by which its existence or ownership can be ascertained in the state of its situs, except, perhaps, in the case of mortgages or shares of stock. The value of intangible property is not easily ascertained.' "

*American States Insurance v. Martin,* 662 So.2d 245, 248 (Ala.1995) (quoting 73 C.J.S. Property § 15 at 184 (1983)). Because the damages that the state plaintiffs seek pursuant to counts ten and eleven are not for injury to tangible property, that is, property "which may be felt or touched," the damages are not included within the definition of tangible property.

■ Moreover, the damages sought in count eleven are clearly not for "bodily injury." Under the policies, "bodily injury" means "bodily injury, sickness or disease sustained by a person, including death resulting

from any of these at any one time."[21] The state plaintiffs claim, however, to have suffered the following injury as a result of the alleged contractual breach: "[E]ach [consumer] was obligated to pay back the reserve amount yet no borrower ever received the value of it; each consumer paid interest on the reserve amount."[22]

### III. DUTY TO INDEMNIFY

■ Although the existence of a duty to defend may be established by the allegations in the injured party's complaint, the insurer's liability to the insured is ultimately established by what is developed at trial. Therefore, a determination of the duty to indemnify cannot be made at a preliminary stage in the proceedings, when it is still possible for the plaintiff in the underlying lawsuit to change the theory of liability and assert a claim that is covered by the policy at issue. *Ladner,* 347 So.2d at 104; *see also Home Ins. Co. v. Rice,* 585 So.2d 859, 861 (Ala. 1991); *Tapscott v. Allstate Ins. Co.,* 526 So.2d 570, 573–75 (Ala.1988). That is why the Seventh Circuit Court of Appeals recently stated that "the duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit." *Nationwide Insurance v. Zavalis,* 52 F.3d 689, 693 (7th Cir.1995).

■ "Because this lawsuit has been brought under the Declaratory Judgment Act and because it has been brought in federal court, an issue of ripeness that may be peculiar to federal courts is raised." *Guaranty National Insurance Company v. Beeline Stores, Inc.,* 945 F.Supp. 1510, 1514 (M.D.Ala.1996). *First,* the Constitution restricts the exercise of judicial power to "cases" and "controversies." U.S. Const. art. III, § 2. The Declaratory Judgment Act, "in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional provision," *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937), and thus "is operative only

**20.** *Id.* at 35.

**21.** *Id.* at 33.

**22.** Evidentiary record filed on July 19, 1996, exhibit A at 13.

in respect to controversies which are such in the constitutional sense." *Id.*[23] "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.... It is immaterial that frequently, in the declaratory judgment suit, the positions of the parties in the conventional suit are reversed; the inquiry is the same in either case." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

*Second,* the Declaratory Judgment Act states that a court "*may* declare the rights and other legal relations of any interested party seeking this declaration." 28 U.S.C.A. § 2201 (emphasis added). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, —— U.S. ——, ——, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995) (quoting *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952)). Therefore, "'[t]here is ... nothing automatic or obligatory about the assumption of "jurisdiction" by a federal court to hear a declaratory judgment action.... Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.'" *Wilton,* —— U.S. at ——, 115 S.Ct. at 2143 (quoting E. Borchard, Declaratory Judgments 313 (2d ed. 1941)).

Emphasizing the "unique breadth of this discretion," the Supreme Court has stated that it is "more consistent with the statute to vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Id.* at ——, 115 S.Ct. at 2144.[24]

Here, Toole could prevail in the underlying lawsuit. With this result, the issue of whether Auto–Owners must indemnify Toole would be moot, and the court would never have to reach the issue. "The time and effort the court and the parties would have expended in resolving the issue would be wasted. For these reasons, the court concludes that the issue of indemnification is not sufficiently ripe to present a 'case' or 'controversy' and that, if there were, the court would still, in the exercise of its discretion, decline to provide declaratory relief."[25] *Beeline Stores, Inc.,* 945 F.Supp. at 1515.

## IV. CONCLUSION

The court concludes that the liability policy issued by Auto–Owners does not apply to any of the claims against Toole presented in the underlying state lawsuit by Lawson. Consequently, Auto–Owners has no obligation to defend Toole in that lawsuit. However, the question of whether Auto–Owners might ultimately be responsible for indemnifying Toole against any losses accruing in that lawsuit is not timely brought before this court. The court therefore grants Auto–Owners's request for declaratory relief in part and denies it in part.

An appropriate judgment will be issued.

**23.** "The word 'actual' is one of emphasis rather than of definition." *Aetna Life Ins.,* 300 U.S. at 240–41, 57 S.Ct. at 463.

**24.** "A state court not constrained by these factors might be able to hear declaratory judgment matters that a federal court cannot." *Beeline Stores, Inc.,* 945 F.Supp. at 1515 n. 3.

**25.** Because the decision whether to provide a defense must be made at a preliminary stage in the proceedings, an insurer's duty to defend can be broader than its duty to indemnify. *Burnham Shoes, Inc. v. West Amer. Ins. Co.,* 504 So.2d 238, 241 (Ala.1987); *see also Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.,* 990 F.2d 598, 605 (11th Cir.1993); *Armstrong,* 479 So.2d at 1168; *Lawler Machine & Foundry Co. v. Pacific Indem. Ins. Co.,* 383 So.2d 156, 157 (Ala.1980).

*JUDGMENT*

In accordance with the memorandum opinion entered on this date, it is the ORDER, JUDGMENT, and DECREE of this court that:

(1) It is DECLARED that plaintiff Auto–Owners Insurance Company has no duty to defend defendant Danny Toole, d/b/a Rucker Auto Sales, in the matter of *Lawson v. Mercury Finance,* civil action no. 95–308–H, pending in the Circuit Court of Houston County, Alabama.

(2) Plaintiff Auto–Owners Insurance Company's request for a declaration that it has no duty to indemnify defendant Danny Toole, d/b/a Rucker Auto Sales for any liability that may result from the *Lawson* lawsuit is dismissed without prejudice.

It is further ORDERED that costs are taxed against defendant Danny Toole, d/b/a Rucker Auto Sales, for which execution may issue.