Rex THORN, et al., Plaintiffs,

v.

**AMERICAN STATES INSURANCE COMPANY, Defendant.**

No. CIV.A. 01–T–1382–N.

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 13, 2002.

Charles E. Vercelli, Jr., Vercelli & Associates, PC, Montgomery, AL, for Rex Thorn, Martha Thorn, Diesel Repower, Thorn's Diesel Service, Inc., plaintiffs.

James Eugene Williams, James Flynn Mozingo, Melton Espy Williams & Hayes, PC, Montgomery, AL, for American States Insurance Company, defendant.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiffs Rex and Martha Thorn, Diesel Repower, and Thorn's Diesel Service, Inc., bring this lawsuit against defendant American States Insurance Company, seeking damages for state-law claims of breach of contract and bad-faith refusal to investigate or provide defense costs and indemnity coverage. This cause is now before the

court on the motion for summary judgment filed by American States, the cross-motion for summary judgment filed by the plaintiffs, and the motion to strike the affidavit of Ron Davenport filed by the plaintiffs. The claims arise from the plaintiffs' attempt to seek coverage under the insurance policy the Thorns hold with American States for a separate lawsuit filed against them, *Raymond Victor Bethel v. Diesel Repower, Inc.,* civil action no. 98–781–PR, pending in the Circuit Court of Montgomery County, Alabama. Jurisdiction is proper pursuant to 28 U.S.C.A. § 1332 (diversity of citizenship). For the reasons below, American States's motion for summary judgment will be granted, the plaintiffs' cross-motion for summary judgment will be denied, and the motion to strike will be denied.

## I. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the nonmoving party to demonstrate why summary judgment would be inappropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. BACKGROUND

The facts, taken in the light most favorable to the plaintiffs, are as follows. Rex and Martha Thorn are current or former shareholders of two businesses: Diesel Repower and Thorn's Diesel. Both businesses are and were engaged in the sale and rebuilding of diesel engines for the maritime industry, with offices located in Gulf Shores and Montgomery, Alabama.

The Thorns purchased a Comprehensive General Liability (CGL) insurance policy issued by American States. The insurance policy was in effect from April 30, 1996, to April 30, 1997. Diesel Repower ceased to do business in January 1999 and filed for bankruptcy in April or May 1999. The Thorns subsequently organized and began doing business as Thorn's Diesel.

This case arises from an underlying lawsuit filed by Raymond Bethel against Diesel Repower and Rex Thorn. *Bethel v. Diesel Repower,* which is pending in the Circuit Court for Montgomery County, No. CV–98–781, was partially settled for $102,975. The suit against Thorn, individually, and the successor corporation, Thorn's Diesel, to hold them liable for the amount in the consent judgment remains to be tried by the Montgomery County Circuit Court. The plaintiffs have brought this suit against American States for failing and refusing to provide indemnity or defense costs for *Bethel v. Diesel Repower* under the Thorns' insurance policy.

Bethel's suit, which arose out of a contract dispute, listed eight causes of action, including breach of contract, fraud, fraudulent suppression, and negligence. Bethel's complaint alleged that he had entered into negotiations with Rex Thorn, as president of Diesel Repower, in July 1996 for repairs to a commercial shipping vessel named the "Manor Park." According to the complaint, the Manor Park was having significant engine problems and was unfit for service until a replacement engine and transmission were delivered and installed. Rex Thorn allegedly represented that Diesel

Repower could supply a marine engine and transmission within 30 days of an order placement, and that a transmission was available for immediate delivery, but that the entire purchase price was payable in advance. The complaint further alleges that Bethel entered into a contract with the defendants to purchase a marine engine and transmission for $93,975, and paid $93,975 at that time. The complaint then alleges that Bethel entered into a second contract with the defendants in February 1997 for the purchase of three generators for $9,000 per unit, and paid $27,000 at that time. The generators were to be shipped immediately, according to the complaint. Finally, the complaint alleges that, after Rex Thorn repeatedly assured delivery, the defendants failed to deliver the engine, transmission, and one of the three generators.

Bethel amended his complaint in July 1999 to add Thorn's Diesel and to assert all claims previously pled against Diesel Repower against Thorn's Diesel as the alleged successor to Diesel Repower. The amended complaint also asserts a cause of action to pierce the corporate veil of Thorn's Diesel and impose personal liability on Rex and Martha Thorn for all claims against Thorn's Diesel. The Montgomery County Circuit Court subsequently entered judgment, to which the parties jointly stipulated, in favor of Bethel against Diesel Repower in the amount of $102,975 for all claims pled in the complaint. The only remaining claim before the court is the claim to pierce the corporate veil of Diesel Repower and the claim for successor liability of Thorn's Diesel Service. Any other claims against Rex and Martha Thorn have been dismissed.

## III. DISCUSSION

 An insurer's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint filed against the insured.

*Auto–Owners Ins. Co. v. Toole,* 947 F.Supp. 1557, 1561 (M.D.Ala.1996); *see also Alfa Mutual Ins. Co. v. Morrison,* 613 So.2d 381, 382 (Ala.1993); *Ladner & Co. v. Southern Guar. Ins. Co.,* 347 So.2d 100, 102 (Ala.1977). " 'If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured." ' *Id.* (quoting *Chandler v. Alabama Mun. Ins. Co.,* 585 So.2d 1365, 1367 (Ala.1991)) (internal citations omitted).

 Under Alabama law, the insured bears the burden to establish coverage by demonstrating that a claim falls within the policy, while the insurer bears the burden to prove that any policy exclusion applies. *Id.* An ambiguous insurance policy must be construed liberally in favor of the insured, and exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured. *Id.* If the policy is not ambiguous, the insurance contract must be enforced as written, and courts should not defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties. *Id.*

Bethel alleges the following in the underlying state-court action:

*Count One:* The defendants breached their contract with Bethel by failing to deliver the marine engine and transmission in exchange for his payment of $93,975.

*Count Two:* The defendants breached the contract by failing to deliver one of the three generators.

*Count Three:* The defendants fraudulently misrepresented that the engine and transmission would be shipped within 30 days of order, and that the transmission was available for immediate delivery.

*Count Four:* The defendants fraudulently misrepresented that they were capable of performing the contract and that delivery of the engine and transmission would be forthcoming and timely.

*Count Five:* The defendants fraudulently misrepresented after the parties entered into a second contract that the three generators would be delivered in a timely fashion.

*Count Six:* The defendants fraudulently misrepresented after Bethel paid for the generators that they could perform the contract and delivery would be timely.

*Count Seven:* The defendants committed fraudulent suppression in failing to communicate all material facts relevant to their performance under the contracts.

*Count Eight:* The defendants committed negligence when they breached their duty to perform their contractual duties in a reasonable and timely fashion under the terms of the contract.

### A. Duty to Defend

#### 1. Breach–of–Contract Claims

The plaintiffs concede that their insurance policy does not provide coverage for the breach-of-contract claims in the *Bethel* suit. These claims include counts one and two. An examination of the language of the contract confirms that it expressly excludes breach-of-contract claims from coverage. Thus, the court finds no duty to defend as to those claims.

#### 2. Fraud Claims

Counts three, four, five, and six of the *Bethel* complaint all allege several alternative theories of fraud. They assert that the defendants knowingly, recklessly, negligently, or mistakenly committed fraudulent misrepresentation, and counts four and six add the term "innocently". Count seven of the complaint alleges only willful and intentional fraudulent suppression.

The plaintiffs concede that all allegations of fraud, suppression, and deceit that are founded upon the alleged intent or willful purpose to harm Bethel are excluded from coverage under the terms of their policy. Count seven is therefore wholly excluded from coverage.

The plaintiffs argue, however, that counts three through six are only partially excluded from coverage because, in those counts, the allegations of intentional or willful fraud are distinct from the allegations of negligent, mistaken, or innocent fraud, such that coverage exists for the latter if not the former. The Alabama Supreme Court has held that an objective standard must be used in determining whether the allegations of a complaint fall under an insurance policy's exclusion of coverage for bodily injury or property damage which is the result of willful and malicious acts of the insured. *State Farm Fire & Cas. Co. v. Davis,* 612 So.2d 458, 465 (Ala.1993). Thus, the acts of the insured, rather than his or her subjective intent to cause injury (or lack of such intent), determine whether a policy exclusion for intentional conduct applies. *See McCauley v. Estes,* 726 So.2d 719, 722 (Ala.Civ.App.1998). Here, while the claims in Bethel's complaint do include negligent, mistaken, or innocent fraud, a complete reading of each claim shows that the acts alleged are intentional, and that no theory of negligent, mistaken, or innocent fraud is actually alleged or supported.

First, paragraph 29 of count three and paragraph 39 of count five are identical:

"Plaintiff asserts that the Defendants knew that the above representations were false at the time that they were made, or the Defendants recklessly made such representations without regard for the truth or falsity thereof, and/or the Defendants negligently or

mistakenly made said representations. The Plaintiff *further alleges that* the Defendants made said representations with the intention and knowledge that the contract would not be performed as promised. The Plaintiff *also asserts that* said representations were made by the Defendants with the intent to deceive the Plaintiff with respect to the material terms of the contract, and to induce the Plaintiff to enter into the contract, and to prepay the purchase price due under the contract." (Emphasis added.)

The second and third sentences of this paragraph, which clearly contains allegations of intentional conduct, are not alternative. They are inclusive, as signaled by the words "further alleges that" and "also asserts that." Moreover, the facts contained in both counts describe intentional behavior, stating that the defendants misrepresented material facts, that the plaintiff reasonably relied on those facts, and that the defendants intended to deceive the plaintiff and induce him to contract with and pay the defendants. While the claims do include the words "negligently or mistakenly," they advance no facts or legal theory to support negligent or mistaken fraud.

Second, paragraph 34 of count four and paragraph 44 of count six are also identical:

"Plaintiff asserts that the Defendants knew the above representations were false at the time that they were made, or the Defendants recklessly made such representations without regard for the truth or falsity thereof, and/or the Defendants negligently, mistakenly, or innocently made such representations, *and* said representations were made with the *intent* to defraud and injure the Plaintiff, *and with the intent* to prevent the Plaintiff from making alternative contractual arrangements, and from seeking immediate legal relief on the contract." (Emphasis added.)

Like counts three and five, these counts do not state claims of intentional conduct in the alternative, but rather make those claims the centerpiece of each count. The fact that the words "negligently, mistakenly, or innocently" were included does not convert these claims into claims for non-intentional fraud. Nor is there any support in the claims for an independent theory of non-intentional fraud.

In other duty-to-defend cases, courts have looked to the factual allegations of the underlying complaint to determine whether a "negligence" claim is actually stated. *See State Farm Fire & Cas. Co. v. Burkhardt*, 96 F.Supp.2d 1343, 1347 (M.D.Ala.2000) (Albritton, J.) (holding that although complaint included "negligent" assault claim, factual allegations supporting tort claims were allegations of willful and malicious conduct, not of negligence).

American States also refers the court to its own decision in *Auto–Owners Ins. Co. v. Toole, supra,* for its holding that inclusion of the words "willfully, wantonly, or negligently" did not negate application of the policy exclusion for actions for fraud. That holding is not on point because unlike the policy here, that policy specifically excluded coverage for allegations of both intentional and non-intentional varieties of fraud. *Auto–Owners,* 947 F.Supp. at 1562. However, here as in *Auto–Owners,* the inclusion of words alleging non-intentional conduct does not change the fact that the claims essentially allege intentional fraud. Counts three, four, five, and six therefore do not give rise to a duty to defend.

Even if the negligent, mistaken, or innocent fraud claims were supported by the factual allegations, the plaintiffs have not met their burden to establish coverage of these claims under their policy. Allegations of negligent or innocent misrepre-

sentation could be covered if the conduct was an "occurrence" that caused either "bodily injury" or "property damage" and the conduct occurred during the policy period. The plaintiffs argue that the negligent or innocent fraud claims in *Bethel* do qualify as an occurrence because misrepresenting that the equipment was ready or was shipped constitutes unintentional tortuous conduct, covered by the policy, rather than contractual conduct, not covered. Moreover, the plaintiffs argue, such misrepresentations fit the policy's definition of occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

In *Auto–Owners*, this court analyzed the argument that a breach-of-contract claim arising out of a business dispute should be covered by an insurance policy that requires an accident or an occurrence. For the same reasons as discussed in *Auto–Owners*, the events giving rise to the *Bethel* claims do not qualify as an occurrence. As already discussed, the *Bethel* claims essentially allege a breach of contract and intentional misrepresentation of the defendants' ability to perform the contract. The essence of Bethel's claims is that he contracted and paid for equipment that he never received, and that the defendants told him the equipment was ready and shipped when it was not. As the court held in *Auto–Owners*, "To allow coverage here would have the effect of transforming [the insurance company] into 'a sort of silent business partner' to the consumer transactions between the [ ] plaintiff and [the defendant]." 947 F.Supp. at 1564 (citations omitted). This would cause an "enormous" expansion of the scope of the insurer's liability without corresponding compensation. *Id.* Even though the *Bethel* claims at issue here are for fraud rather than breach of contract, the effect of extending coverage to these claims would be the same: the policy, which was clearly designed to protect the plaintiffs from liability for essentially accidental injury to another person, or property damage to another's possessions, would be stretched beyond its reasonable interpretation. *See id.*

The plaintiffs maintain that the *Bethel* breach-of-contract and fraudulent-misrepresentation claims are separate and distinct, under both the Alabama Supreme Court's decision in that case, *Bethel v. Thorn*, 757 So.2d 1154 (Ala.1999) and in *United States Fidelity & Guaranty Co. v. Birmingham Oxygen Service, Inc.*, 290 Ala. 149, 274 So.2d 615 (1973). However, in the *Bethel* decision, the Supreme Court did not hold that the two types of claims were separate but rather established only that Bethel had stated some viable claims for fraud. 757 So.2d at 1162–1163.

In *Birmingham Oxygen*, the court held that a claim is *ex contractu* when it arises from the breach of a promise, as distinguished from an *ex delicto* claim which arises from the breach of a duty growing out of the relationship between the parties to a contract. 274 So.2d at 620. The facts involved a person with a terminal condition contracting with the insured, a medical equipment provider, for the delivery of oxygen, which the insured knew the person depended upon to stay alive. The insured failed to use reasonable care not in fulfilling the terms of the contract, but in meeting a duty imposed by the relationship of the parties and the subject matter underlying the transaction. The *Bethel* claims are substantially different; the fraudulent misrepresentation claims arise directly out of and are inextricably linked with the breach-of-contract claims.

▮ American States finally argues that it has no duty to defend because all of the losses alleged by Bethel were non-covered economic losses. In *American States Insurance Co. v. Martin*, 662 So.2d 245 (Ala.

1995), the Alabama Supreme Court held that the loss of money does not qualify as property damage. In that case, the underlying plaintiffs had invested money in a real estate company and brought suit for the loss of their investments after the company's financial collapse. *Id.* at 246–47. The Alabama Supreme Court held that "strictly economic losses like lost profits, loss of an anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to 'tangible' property." *Id.* at 249. Bethel's claims as listed in the complaint are for loss of the purchase price he paid for the three pieces of equipment, the loss of the benefit of the bargain he struck when he paid for the equipment he expected to receive, and lost profits due to his inability to use his boat while it awaited the equipment. Because all of these claims are for strictly economic losses, there is no duty to defend.

For all of these reasons, the court concludes that American States has no duty to defend the plaintiffs on the fraud claims raised by Bethel.

### 3. Negligence Claim

Count eight of Bethel's complaint states a claim for "negligent breach of the defendants' duty to perform their contractual duties in a reasonable and timely fashion under the terms of the contract." This circuitous language states nothing more than a claim for breach of contract, which, as stated above, is expressly excluded from coverage under the terms of the insurance policy. American States therefore has no duty to defend as to this count.

### B. Duty to Indemnify

American States argues that it has no duty to indemnify the plaintiffs for any of the remaining claims in the *Bethel* suit, not only for reasons given above, but also because all of the losses alleged by Bethel were non-covered economic losses. American States contends that, because the judgment entered by the court in *Bethel* comprises the exact amount Bethel paid for the engine, transmission, and generator he never received, the judgment is for a "strictly economic loss," which is excluded from coverage under Alabama law. The court agrees.

### C. Bad Faith

The plaintiffs have alleged that American States committed bad faith in failing and refusing (1) to investigate the claims against them, (2) to defend or indemnify them in the Bethel lawsuit, and (3) even to tell them whether it would defend or indemnify them for over two years. The plaintiffs base this claim in part on the similarities between Bethel's case against them and that of another case against them, *Minera Volcan v. Diesel Repower,* in which American States defended and indemnified them by contributing to a settlement.

The Alabama Supreme Court has held that the elements of a bad-faith-refusal-to-pay-an-insurance claim include (1) an insurance contract between the parties and a breach thereof by the defendant; (2) an intentional refusal to pay the insured's claim or defend the insured; (3) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason; and (5) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim. *State Farm Fire & Cas. Co. v. Slade,* 747 So.2d 293, 304 (Ala.1999). The court added that the "plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any rea-

sonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim." *Id.* The court also held that "if a lawful basis for denial actually exists, the insurer, as a matter of law, cannot be held liable in an action based upon the tort of bad faith." *Id.* Here, as the court has found, American States had a lawful basis for denial: it owed no duty to defend or indemnify the plaintiffs in the *Bethel* suit. Therefore, American States cannot be held liable for bad faith in its failure or refusal to defend or indemnify.

### D. Motion to Strike

The plaintiffs have also moved to strike the affidavit of Ron Davenport, the Montgomery lawyer retained by American States to determine whether it had a duty to defend or indemnify the plaintiffs for the *Bethel* suit. The plaintiffs argue that, because Davenport's affidavit expresses an opinion on the ultimate issue of this case, namely, whether there is an obligation to provide either a defense or indemnity coverage to the plaintiffs under the terms of the insurance policy, it is improper, since the court alone must decide the ultimate issue.

While it is true that the court must decide ultimate issues of law, Davenport's affidavit is clearly submitted to address the plaintiffs' bad-faith claim. Davenport's affidavit addresses the third and fourth bad-faith elements as set forth above in *Slade:* the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason) and the insurer's actual knowledge of the absence of any legitimate or arguable reason. *Slade, supra.* The affidavit is relevant to the issue of whether American States relied on the advice of counsel and the reasons (or lack thereof) for its refusal to defend or indemnify. The motion to strike will therefore be denied.

An appropriate judgment will be entered.

### JUDGMENT

In accordance with the memorandum opinion entered today, it is the ORDER, JUDGMENT, and DECREE of the court that:

(1) The motion for summary judgment, filed by defendant American States Insurance Company on March 14, 2002 (Doc. no. 10), is granted.

(2) The cross-motion for summary judgment, filed by plaintiffs Rex Thorn, Martha Thorn, Thorn's Diesel Service, Inc., and Diesel Repower, on April 22, 2002 (Doc. no. 17), is denied.

(3) The motion to strike affidavit, filed by plaintiffs Rex Thorn, Martha Thorn, Thorn's Diesel Service, Inc., and Diesel Repower, on April 22, 2002 (Doc. no. 16), is denied.

(4) Judgment is entered in favor of defendant American States Insurance Company and against plaintiffs Rex Thorn, Martha Thorn, Thorn's Diesel Service, Inc., and Diesel Repower, with these plaintiffs taking nothing by their complaint.

It is further ORDERED that all other outstanding motions are denied as moot.

It is further ORDERED that costs are taxed against plaintiffs Rex Thorn, Martha Thorn, Thorn's Diesel Service, Inc., and Diesel Repower, for which execution may issue.