C. Lynwood Smith, Jr., United States District Judge *1251 This is a declaratory judgment proceeding. See 28 U.S.C. § 2201.[1] Jurisdiction is based upon the diversity statute. See 28 U.S.C. § 1332(a).[2] The plaintiff, Pennsylvania National Mutual Casualty Insurance Company ("Penn National"), issued two policies of insurance to Christopher Professional Enterprises, Inc., and seeks a judgment declaring its rights and obligations under those policies with respect to claims made against an additional insured under the policies - i.e. , Hethcoat & Davis, Inc. - in a state-court action pending in the Circuit Court for Limestone County, Alabama.[3] That case arose out of an accident that occurred at a construction site in Limestone County. Jesus Alfredo Teran-Chavarria ("Jesus Teran") was killed, and Jorge Arturo Ruiz-Vega ("Jorge Ruiz") was severely injured but survived.[4]
The case presently is before the court on two motions. The first seeks a dismissal of this action, and was filed by the following defendants: Jorge Ruiz; William Patrick Castle, who sues in his capacity as the personal representative of the Estate of Jesus Teran, deceased; Armida Chavarria-Sigala, the surviving dependant mother of Jesus Teran; Alfredo Teran-Gardea, the surviving dependant father of Jesus Teran; and Cristian Joe Teran-Chavarria, the surviving dependent brother of Jesus Teran.[5] For convenience, the foregoing parties - all of whom are the plaintiffs in the underlying state-court action, but defendants in *1252 the present declaratory judgment proceeding - will be collectively referred to as "the state plaintiffs."
The second motion was filed by defendant Hethcoat & Davis, Inc., and it is entitled as a "Motion to Dismiss Pursuant to Rule 12(b)(6), Fed. R. Civ. P., or Alternatively Motion to Abstain or Stay the Litigation."[6]
Following consideration of the pleadings and briefs, the court concludes that the state plaintiffs' motion is due to be granted in part, and denied in part. Hethcoat's motion is due to be denied.
I. STANDARD OF REVIEW
Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 550, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citations omitted). As the Supreme Court also stated in Iqbal :
A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [ Twombly ,] 550 U.S. at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. , at 557, 127 S.Ct. 1955.
To survive a motion to dismiss [founded upon Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." Id. , at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. , at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id. , at 557, 127 S.Ct. 1955 (brackets omitted).
Two working principles underlie our decision in Twombly. First , the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. , at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted) ). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second , only a complaint that states a plausible claim for relief survives a motion to dismiss.
*1253 Id. , at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [ Iqbal v. Hasty, ] 490 F.3d [143,] at 157-158 [ (C.A.2 2014) ]. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.
Iqbal , 556 U.S. at 678-79, 129 S.Ct. 1937 (first and second alterations and all emphasis supplied).
II. RELEVANT ALLEGATIONS OF THE COMPLAINT IN THE UNDERLYING, STATE-COURT ACTION
The state plaintiffs commenced suit in Limestone County Circuit Court against three entities: Christopher Professional Enterprises, Inc., doing business as Christopher Plumbing & Electric Company ("Christopher Professional"); the Limestone County Water & Sewer Authority; and Hethcoat & Davis, Inc. ("Heathcoat").[7] Their complaint alleges that, on October 19, 2013, Christopher Professional was a plumbing subcontractor hired by the general contractor (the Limestone County Water and Sewer Authority) to perform trench excavation labor on a sewer line construction project at or near the intersection of Gardenview Lane with County Road 99 in Limestone County, Alabama.[8] Hethcoat was described as an engineering contractor "performing comprehensive full-time jobsite construction engineering and planning services at the subject project."[9] Jesus Teran and Jorge Ruiz were employed by Christopher Professional, and were "installing and assembling a manhole" at the construction-site. The walls of the excavation in which those two individuals were digging collapsed.[10] Jesus Teran was killed, and Jorge Ruiz sustained severe lumbar spine injuries, but survived.[11]
The complaint filed in the underlying state-court action contains fourteen counts.[12] The first Count asserts a claim under the "Workers' Compensation Act of the State of Alabama"[13] on behalf of the state plaintiffs against Christopher Professional.[14] Count Two asserts a claim on behalf of the same plaintiffs against the same defendant for its alleged negligent and/or wanton failure to provide a safe work-site.[15] Count Three asserts a Workers'
*1254 Compensation Act claim on behalf of Jorge Ruiz against Christopher Professional.[16] Count Four asserts a claim on behalf of all plaintiffs against the Limestone County Water and Sewer Authority for negligent and/or wanton failure to provide a safe work-site.[17] Count Five asserts a claim on behalf of all plaintiffs against Hethcoat for negligent and wanton "failure to provide adequate safety devices, safety systems, and/or adequate cave-in protection systems, failure to implement and/or require OSHA safety systems, failure to follow general engineering safety principles and practices, [and] failure to warn ... of the nature of hazards involved ..."[18] Counts Six, Seven, and Eight assert claims on behalf of all plaintiffs against all defendants for negligent and/or wanton failure "to exercise reasonable care in hiring, training, supervising or retaining competent employees and/or subcontractors...."[19] Counts Nine, Ten, and Eleven assert claims on behalf of all plaintiffs against all defendants for breach of contract.[20] Count Twelve asserts a claim of premises liability on behalf of all plaintiffs against the Limestone County Water and Sewer Authority.[21] Count Thirteen re-alleges claims on behalf of all plaintiffs against all defendants for negligence and/or wantonness.[22] Count Fourteen re-alleges all of the claims described above against so-called "fictitious defendants."[23]
Hethcoat made a demand upon Penn National to provide a defense to, and indemnification for, all claims asserted against it. Penn National sought to intervene in the state-court action for the purpose of determining whether it had a duty under the insurance contracts issued to Christopher Professional to indemnify and defend Hethcoat as an additional insured. The parties objected to intervention, however, and the state circuit court judge denied Penn National's motion.[24] The present action, seeking a judgment declaring whether Penn National owes a duty to defend and/or indemnify Hethcoat for the claims asserted against it in the underlying state-court action, then was filed.[25]
III. RELEVANT ALLEGATIONS OF THE COMPLAINT
Penn National issued two insurance policies to Christopher Professional prior to the incident that occurred on October 19, 2013: i.e. , Commercial General Liability Policy Number CL9 0610260 (the "Commercial Policy"); and Umbrella Liability Policy Number UL9 0697773 (the "Umbrella Policy").
The Commercial Policy, which was in force and effect between January 1, 2013 and the same date in 2014, named Christopher Professional as the insured, and Hethcoat as an additional insured.[26] That policy provided that Penn National would
*1255 pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result....
Doc. no. 1 (Complaint), Exhibit B (Commercial General Liability Policy), at ECF 50 (ellipsis supplied).
The Umbrella Policy, which was in force and effect between May 16, 2013 and January 1, 2014, named Christopher Professional as the insured, and "potentially provide[d] certain limited coverage for Hethcoat & Davis as an additional insured."[27] That policy provided that Penn National would
pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit," for which we have the duty to defend....
Doc. no. 1 (Complaint), Exhibit C (Commercial Umbrella Liability Policy), at ECF 98 (ellipsis supplied).
Based upon the foregoing provisions in the Commercial and Umbrella policies, Penn National tendered a defense to Hethcoat in the underlying state-court litigation, pursuant to a reservation of rights.[28]
IV. DISCUSSION
A. State Plaintiffs' Contention That No Justiciable Controversy Exists
The state plaintiffs' motion to dismiss was submitted to this court without accompanying argument. Instead, those parties' included only a single paragraph at the end of their answer to the Penn National complaint, asking this court to "dismiss this civil action for Declaratory Relief or Judgment, on the grounds that said civil action is premature, no liability in the underlying civil lawsuit pending in Circuit Court of Limestone County, Alabama has been established" and, therefore, "no justiciable controversy exist[s] and this matter is not ripe for adjudication."[29]
*1256 Article III, Section 2 of the United States Constitution limits the judicial power of federal courts to "cases or controversies": a limitation that courts have interpreted as including a requirement that suits be "ripe" for adjudication. Because a suit that lacks ripeness is not justiciable, the absence of ripeness precludes the federal courts from exercising jurisdiction. See , e.g. , 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 227:21 (1997).
As such, this court must determine whether Penn National's claims present an "actual controversy" within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201. See Maryland Casualty Co. v. Pacific Coal & Oil Co. , 312 U.S. 270, 272, 61 S.Ct. 510, 85 L.Ed. 826 (1941). When making that determination,
the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. See Aetna Life Ins. Co. v. Haworth , 300 U.S. 227, 239-242, 57 S.Ct. 461, 81 L.Ed. 617 [ (1937) ]. It is immaterial that frequently, in the declaratory judgment suit, the positions of the parties in the conventional suit are reversed; the inquiry is the same in either case. Nashville, C. & St. L. Ry. Co. v. Wallace , [288 U.S. 249,] 261, 53 S.Ct. 345, 77 L.Ed. 730 [ (1933) ].
Id. at 273, 61 S.Ct. 510 (alterations supplied).
It also is important to understand the difference between a claim that concerns the insurance company's duty to defend and a claim that concerns its duty to indemnify (i.e. , the duty of an insurer to pay a judgment against its insured). See 16 Couch on Insurance 3d § 227:21. In essence, the insurance company's duty to defend is based upon
the potential that the trial of the underlying suit against the insured may develop facts showing that the occurrence is within the coverage; the duty to pay the judgment or reasonable settlement [i.e. , to indemnify the insured] is based on facts having been established which show the occurrence to actually have been within the coverage.
Id. § 227:27 (alteration supplied, footnote omitted). Thus, "[a]n insurer's duty to indemnify under a policy is not as extensive as its duty to defend. " State Farm & Casualty Co. v. Myrick , 611 F.Supp.2d 1287, 1291 (M.D. Ala. 2009) (alteration and emphasis supplied)(citing Hartford Casualty Insurance Co. v. Merchants & Farmers Bank , 928 So.2d 1006, 1009 (Ala. 2005) (per curiam ) ). Accordingly, "the duties must be analyzed separately." Myrick , 611 F.Supp.2d at 1291 (citing Tanner v. State Farm Fire & Casualty Co. , 874 So.2d 1058, 1066 (Ala. 2003) ).
1. The duty to defend
An insurance company's "duty to defend is ... broader than the duty to pay [i.e. , indemnify ], arises well before any duty to pay is conclusively established, and may well exist in a case in which the insurer is ultimately deemed not to be liable on the policy." 16 Couch on Insurance 3d § 227:27 (1997) (ellipsis and alteration supplied). "Accordingly, [the question of] whether an insurer has a duty to defend a suit against its insured is generally considered a controversy ripe for declaratory relief, even when the issue of the insurer's actual liability in the underlying suit may not be considered until after a resolution of that suit." Id. § 227:29 (alteration supplied) (footnotes omitted).
"An insurance company's duty to defend its insured from suit is determined by the language of the insurance policy and by the allegations in the complaint *1257 filed against the insured." Allstate Indemnity. Co. v. Lewis , 985 F.Supp. 1341, 1344 (M.D. Ala. 1997) (citing ALFA Mutual Insurance Co. v. Morrison , 613 So.2d 381, 382 (Ala. 1993) ; Ladner & Co. v. Southern Guaranty Insurance Co. , 347 So.2d 100, 102 (Ala. 1977) ). This is because:
"As long as the complaint comprehends an injury which may be within the scope of the policy, the company must defend the insured until the insurer can confine the claim to a recovery that the policy does not cover." United Services [Automobile Association. v. Elitzky , 358 Pa.Super. 362], 517 A.2d [982,] 985 [ (1986) ]; see also Terra Nova Ins. Co. v. 900 Bar, Inc. , 887 F.2d 1213, 1226 (3d Cir. 1989) (applying Pennsylvania law) ; [ Pacific Indemnity Co. v.] Linn , 766 F.2d [754,] 760 [ (3d Cir. 1985) ]; Erie Ins. Exch. v. Transamerica Ins. Co. , 516 Pa. 574, 533 A.2d 1363, 1368 (1987) ; [ Aetna Casualty & Surety Co. v.] Roe , [437 Pa.Super. 414,] 650 A.2d [94,] 99 [ (Pa. Super. Ct. 1994) ]; Heffernan & Co. [v. Hartford Insurance Co. ], 418 Pa.Super. 326, 614 A.2d [295,] 297-98 [ (Pa. Super. Ct. 1992) ]. Any doubts on this score are to be resolved in favor of the insured. Antrim Mining, Inc. v. Pennsylvania Insurance Guaranty Ass'n , 436 Pa.Super. 522, 648 A.2d 532, 535 (1994) (quoting O'Brien Energy Systems Inc. v. American Employers' Insurance Co. , 427 Pa.Super. 456, 629 A.2d 957, 960 (1993) ). Thus, a court ordinarily will have no reason to immerse itself in the facts surrounding the incident in question; it need only look to the allegations made against the insured and decide whether, if proven, those allegations would establish an injury that the policy would cover.
Nationwide Ins. v. Zavalis , 52 F.3d 689, 694 (7th Cir. 1995) (alterations supplied); see also American Safety Indemnity Co. v. T.H. Taylor, Inc. , 513 Fed.Appx. 807, 811 (11th Cir. 2013) (citing Hartford Casualty Insurance Co. v. Merchants & Farmers Bank , 928 So.2d 1006, 1009 (Ala. 2005) ; United States Fidelity & Guaranty Co. v. Armstrong , 479 So.2d 1164, 1167 (Ala. 1985) (explaining that "the general rule is that, in deciding whether a duty to defend exists, the courts look to the issue pleadings alleging the claim being made against the insured") ).
Federal courts in Alabama have repeatedly resolved the issue of an insurer's duty to defend based upon the pleadings, and prior to resolution of the underlying lawsuit. See Lewis , 985 F.Supp. at 1344-49 (granting request for judgment on the pleadings); Auto-Owners Insurance Co. v. Toole , 947 F.Supp. 1557, 1561-65 (M.D. Ala. 1996) (granting request for declaratory judgment); Guaranty National Insurance Co. v. Beeline Stores, Inc. , 945 F.Supp. 1510, 1513-14 (M.D. Ala. 1996) (granting request for declaratory judgment).
Here, the underlying litigation will determine Hethcoat's liability, but will not address Penn National's duty to defend Hethcoat. Because the resolution of the issue of Hethcoat's liability will not inform the issue of Penn National's duty to defend that entity in the underlying state-court action, this court will follow the persuasive approach of the courts in Toole and Beeline , supra , and will deny the state plaintiffs' motion to dismiss Penn National's complaint insofar as it asks this court to declare whether it has a duty to defend.
2. The duty to indemnify
Unlike the duty to defend, "the duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit." Nationwide Insurance v. Zavalis , 52 F.3d 689, 693 (7th Cir. 1995) (citing Heffernan & Co. v. Hartford Insurance Co. , 418 Pa.Super. 326, 614 A.2d 295, 298 (1992) ;
*1258 United Services Automobile Association v. Elitzky , 358 Pa.Super. 362, 517 A.2d 982, 992 (1986) ). Instead, as the Middle District of Alabama recognized in Guaranty National Insurance Co. v. Beeline Stores, Inc. , 945 F.Supp. 1510 (M.D. Ala. 1996) :
[Even though] the existence of a duty to defend may be established by the allegations in the injured party's complaint, the insurer's liability to [i.e. , duty to indemnify ] the insured is ultimately established by what is developed at trial. So a determination of the duty to indemnify cannot be made at a preliminary stage in the proceedings , when it is still possible for the plaintiff in the underlying lawsuit to change the theory of liability and assert a claim that is covered by the policy at issue.
Id. at 1514 (alterations and emphasis supplied) (citing Ladner & Co. v. Southern Guaranty Insurance Co. , 347 So.2d 100, 104 (Ala. 1977) ; Home Insurance Co. v. Rice , 585 So.2d 859, 861 (Ala. 1991) ; Tapscott v. Allstate Insurance Co. , 526 So.2d 570, 573-75 (Ala. 1988) ).
Moreover, if the insured prevailed in the underlying lawsuit, the court would not have to reach the issue of whether the insured was entitled to indemnification, and the "time and effort the court and the parties would have expended in resolving the issue would be wasted." Auto-Owners Insurance Co. v. Toole , 947 F.Supp. 1557, 1566 (M.D. Ala. 1996) (citing Beeline , 945 F.Supp. at 1514 ).
Thus, the courts in Toole and Beeline declined to resolve the issue of indemnity pending the resolution of the underlying lawsuit on the insured's liability. See Toole , 947 F.Supp. at 1565-66 (dismissing without prejudice the insurer's motion for declaratory judgment); Beeline , 945 F.Supp. at 1514-15 (denying without prejudice the insurer's motion for declaratory judgment).
This court finds the Toole and Beeline decisions to be persuasive. Accordingly, this court will not resolve the question of whether Penn National has a duty to indemnify Hethcoat in the absence of a ruling on Hethcoat's liability in the underlying state-court action, and will grant the state plaintiffs' motion to dismiss Penn National's claim as to its duty to indemnify.
B. Hethcoat's Objection Pursuant to the United States Supreme Court's Decisions in Wilton and Brillhart
Hethcoat argues that Penn National's complaint should be dismissed in accordance with the Supreme Court's decisions in Wilton v. Seven Falls Co. , 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), and Brillhart v. Excess Insurance Company of America , 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). Hethcoat argues that the verdict or judgment in the underlying state court action will " 'fully and finally resolve the controversy between the parties,' "[30] and that, due to the advanced stage of the underlying litigation, "there is a very significant likelihood that all of the issues raised by Penn National in this declaratory action will soon be moot."[31]
The Supreme Court's 1995 opinion in Wilton confirmed its decision in the 1942 Brillhart case, holding that district courts have broad discretion in deciding whether to dismiss or stay a federal declaratory judgment action during the pendency of parallel state court proceedings. As the Wilton Court explained:
There is nothing automatic or obligatory about the assumption of jurisdiction by a *1259 federal court to hear a declaratory judgment action. By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.
Wilton , 515 U.S. at 288, 115 S.Ct. 2137 (citations and footnote omitted). The Wilton Court also noted that, "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." Id. at 288 n.2, 115 S.Ct. 2137.
The Eleventh Circuit specifically addressed a "federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts" in the case of Ameritas Variable Life Insurance Co. v. Roach , 411 F.3d 1328, 1331 (11th Cir. 2005) (emphasis supplied). That court held that district courts have " 'substantial latitude in deciding whether to stay or dismiss a declaratory judgment suit in light of pending state proceedings.' " Id. at 1332 (quoting Wilton , 515 U.S. at 286, 115 S.Ct. 2137 ). The Ameritas opinion also provided a list of considerations to aid district courts in balancing state and federal interests: i.e. ,
(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
(2) whether the judgment in the federal declaratory action would settle the controversy;
(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" - that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;
(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
(6) whether there is an alternative remedy that is better or more effective;
(7) whether the underlying factual issues are important to an informed resolution of the case;
(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.
Ameritas , 411 F.3d at 1331.[32] The Ameritas opinion observed that the foregoing list *1260 of considerations was "neither absolute nor is any one factor controlling"; instead, the list served "merely [as a] guidepost." Id. (alteration supplied).
This court finds Hethcoat's argument that Wilton and Brillhart require dismissal of this declaratory judgment proceeding to be unpersuasive. As an initial matter, this case and the underlying litigation are not "parallel proceedings." See Scottsdale Insurance Co. v. Detco Industries, Inc. , 426 F.3d 994, 997 (8th Cir. 2005) ("Suits are parallel if substantially the same parties litigate substantially the same issues in different forums.") (citations omitted). Penn National is not a party to the state-court action, by intervention or otherwise. The central issues in that suit are Christopher Professional's and Hethcoat's liability to the state plaintiffs for negligence and breach of contract, whereas the central issue in the present case is Penn National's obligation to defend and indemnify Hethcoat. See , e.g. , State Farm Fire and Casualty Co. v. Knight , No. 09-0783-WS-B, 2010 WL 551262, *3 n.9 (S.D. Ala. Feb. 11, 2010) ("Where the declaratory judgment action is brought by an insurer against an insured, there are no parallel proceedings if '(1) the insurer was not a party to the suit pending in state court; and (2) the state court actions involved issues regarding the insured's liability, whereas the federal suit involved matters of insurance coverage.' ") (quoting Continental Casualty Co. v. Advance Terrazzo & Tile Co. , 462 F.3d 1002, 1006 (8th Cir. 2006) ).
Additionally, the Ameritas factors, considered as a whole, do not weigh in favor of either dismissing or staying this proceeding.[33] This declaratory judgment action will resolve the question of coverage under Hethcoat's policy with Penn National - a question that has not been raised in the underlying litigation. There is no concern about friction between, or inconsistent rulings from, the state court and this court, because the same issues are not being decided in both fora. Specifically, the factual underpinnings of the state-court action - i.e. , Hethcoat's liability to the state plaintiffs - will not be relevant to the issue of coverage that forms the basis of this proceeding.
Accordingly, Hethcoat's argument that this court should abstain from hearing this declaratory judgment action under the Supreme Court's opinions in Wilton and Brillhart is rejected.
C. Missing Necessary Parties
Finally, Hethcoat argues that this declaratory judgment proceeding will not settle the controversy in its entirety, because necessary parties to the action are missing.[34] In support of that contention, Hethcoat asserts that Christopher Professional entered into a contract with the Limestone County Water and Sewer Authority *1261 that required Christopher Professional to list Limestone County Water and Sewer Authority and Hethcoat as additional insureds.[35] That contract, Hethcoat asserts, also required Christopher Professional to indemnify Hethcoat and its agent, Buford Fontenot.[36] For such reasons, Hethcoat argues that both Christopher Professional and Buford Fontenot are necessary parties to this action. Hethcoat provides no further argument explaining why those parties are indispensable. In response, Penn National simply states that it has "resolved the issues regarding coverage with Christopher Enterprises and is currently determining whether to join additional parties to this action."[37]
Although Hethcoat argues there are missing necessary parties, it failed to move to dismiss under Fed. R. Civ. P. 12(b)(7).[38] Hethcoat also failed to cite or mention Fed. R. Civ. P. 19 in support of its argument.[39] Even so, the court will construe Hethcoat's argument as a motion under Fed. R. Civ. P. 12(b)(7). It is the defendant's burden to establish whether Fed. R. Civ. P. 19(b) requires dismissal. Molinos Valle Del Cibao, C. por A. v. Lama , 633 F.3d 1330, 1347 (11th Cir. 2011). Hethcoat has not shouldered that burden. Accordingly, the court will not dismiss any of its claims for failure to join indispensable parties.
V. CONCLUSION
For the reasons discussed above, this court finds that the issue of whether Penn National has a duty to defend Hethcoat & Davis is ripe for adjudication, the issue of whether Penn Nation has a duty to indemnify Hethcoat is not ripe, there is no parallel litigation pending in state court requiring the dismissal or stay of this declaratory action, and Hethcoat did not satisfy its burden of demonstrating that Penn National failed to join necessary parties. Accordingly, it is ORDERED that the state plaintiffs' motion to dismiss is GRANTED as to the issue of Penn National's duty to indemnify, but DENIED as to the issue of Penn National's duty to defend. Additionally, it is ORDERED that Hethcoat's motion to dismiss or, in the alternative, to stay, is DENIED.
*1262 DONE and ORDERED this 10th day of March, 2017.

The cited statute provides that: "In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201 (ellipsis supplied).

There is complete diversity of citizenship - i.e. , plaintiff is a Pennsylvania corporation with its principal place of business in that State, defendant Hethcoat & Davis, Inc., is a Tennessee corporation with its principal place of business in that State, all remaining defendants are Alabama residents - and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. See 28 U.S.C. § 1332(a)(1).

The underlying state-court action is styled William Patrick Castle, as personal representative of the Estate of Jesus Alfredo Teran-Chavarria, et al. v. Limestone County Water & Sewer Authority, a corporation, et al. , Civil Action Number CV-2014-900232, Circuit Court of Lauderdale County, Ala.

See doc. no. 1 (Complaint), at ¶ 15. For information on the use of the first of the two Hispanic surnames, see https://en.wikipedia.org/wiki/Spanish_naming_customs; and http://perez.cs.vt.edu/twolastnames.

See doc. no. 10 (Response to Complaint for Declaratory Judgment). The foregoing responsive pleading incorporates both an answer to the plaintiff's complaint, id. at 1-3, and, a motion to dismiss asserting that the "action is premature" because "no liability in the underlying civil lawsuit pending in the [state court] has been established" and, therefore, "no justiciable controversy exist[s] and the matter is not ripe for adjudication." Id. at 3 (alterations supplied).

Doc. no. 16.

See doc. no. 1 (Complaint), ¶ 17.

Id. , Exhibit A (Complaint Filed in the Underlying State-Court Action), ¶¶ 22-23.

Id. , ¶ 42.

Id. , ¶¶ 15, 28.

Id. , ¶ 28.

Numerous "fictitious defendants" are described in the state-court complaint, but will be disregarded here.

[Missing text].

See See Ala. Code § 25-5-1 et seq ; doc. no. 1, Exhibit A (Complaint Filed in the Underlying State-Court Action), ¶¶ 9-18.

Doc. no. 1, Exhibit A (Complaint Filed in the Underlying State-Court Action), ¶¶ 19-23.

Id. , ¶¶ 24-33.

Id. , ¶¶ 34-40.

Id. , ¶¶ 41-48 (ellipsis and alteration supplied).

Id. , ¶¶ 49-66 (ellipsis supplied).

Id. , ¶¶ 67-83.

See doc. no. 1, Exhibit A (Complaint Filed in the Underlying State-Court Action), ¶¶ 84-90.

Id. , ¶¶ 91-94

Id. , ¶¶ 95-97.

Doc. no. 14 (Plaintiff's Objection to Defendants' Motion to Dismiss), at 6 (alteration supplied). Note: Plaintiff cites to an "Order from Court denying Penn National's Motion to Intervene" attached in Exhibit A to its complaint. Even so, no such document is contained within plaintiff's "Exhibit A." See doc. no. 1, at Exhibit A (Complaint filed in CV-2014-900232 in the Circuit Court of Limestone County, Alabama).

Doc. no. 1 (Complaint), ¶ 26.

Doc. no. 1 (Complaint), Exhibit B (Commercial General Liability Policy), at ECF 38. Note : "ECF" is an acronym formed from the initial letters of the "Electronic Case Filing" system that allows parties to file and serve documents electronically. See The Bluebook: A Uniform System of Citation , Rule 7.1.4, at 21 (Columbia Law Review Ass'n et al. eds., 19th ed. 2010). When this court cites to pagination generated by the ECF header, it will, as here, precede the page number(s) with the letters "ECF." Doc. no. 1 (Complaint), ¶ 5.

Doc. no. 1 (Complaint), ¶ 14 (alteration supplied); see id. , Exhibit C (Commercial Umbrella Liability Policy), at ECF 86.

Doc. no. 1 (Complaint), ¶ 23.

Doc. no. 10 (Response to Complaint for Declaratory Judgment), at 3 (alteration supplied).

Doc. no. 16 (Hethcoat's Motion to Dismiss or in the Alternative Stay), at 4 (quoting Ven-Fuel, Inc. v. Department of the Treasury , 673 F.2d 1194, 1195 (11th Cir. 1982) ).

Id.

See also Ameritas , 411 F.3d at 1331 n.4, providing that:
This Circuit has not previously espoused a specific set of criteria to be applied in cases such as this one - where a district court is faced with a declaratory action brought in federal court on the basis of diversity and a subsequent parallel lawsuit on the merits is instituted in state court. Other circuits, most notably the Fourth and Sixth Circuits, have already explored this question in detail, and have set forth certain factors, which we adopt as guideposts for the district courts. These factors arise from a variety of sources. See Scottsdale Ins. Co. v. Roumph , 211 F.3d 964, 968 (6th Cir. 2000) ; Centennial Life Ins. Co. v. Poston , 88 F.3d 255, 257 (4th Cir. 1996) ; 12 Moore's Federal Practice , § 57.42 (3d ed.2005).

Because this case and the underlying litigation are not "parallel litigation," it is not even necessary to consider the Ameritas factors. See Atlantic Casualty Insurance Co. v. GMC Concrete Company Inc. , No. 07-0563-WS-B, 2007 WL 4335499, *3 (S.D. Ala. Dec. 7, 2007) ("A number of courts have either held or suggested that the absence of parallel proceedings undermines the premise of a Wilton discretion analysis, rendering it inappropriate or inapplicable.") (citations omitted). Even so, the court will discuss the Ameritas factors here for the sake of completeness.

Doc. no. 16 (Defendant Hethcoat's Motion to Dismiss or in the Alternative Stay), at ¶ 9.

Id.

Id.

Doc. no. 20 (Penn National's Response to Hethcoat's Motion to Dismiss), at ¶ 10.

Fed. R. Civ. P. 12(b)(7) states:
(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
(1) lack of subject-matter jurisdiction;
(2) lack of personal jurisdiction;
(3) improper venue;
(4) insufficient process;
(5) insufficient service of process;
(6) failure to state a claim upon which relief can be granted; and
(7) failure to join a party under Rule 19.
Id. (emphasis provided).

The practice commentary to Fed. R. Civ. P. (19) states:
Under the Federal Rules, it is the plaintiff who primarily determines the scope of the lawsuit. Rule 19 is one of the exceptions. It allows a defendant to point to someone that the plaintiff has left out of the lawsuit, assert that the absent person's participation is critical, and ask the court to join that person. If the court agrees that the absent person is required, as defined in Rule 19(a), then the court must join that person if feasible. If the absent person cannot be joined - usually because of jurisdictional issues - then the court must decide, using the standards set forth in Rule 19(b), whether to proceed without that person or dismiss the suit. As a practical matter, many Rule 19 motions are filed in the hope that the motion will lead to dismissal of the suit rather than joinder of the absent person.