[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-11568

_____

JAMES RIVER INSURANCE COMPANY,
an Ohio corporation,

Plaintiff-Counter Defendant-Appellant,

*versus*

ULTRATEC SPECIAL EFFECTS INC,
a foreign company,

Defendant-Counter Claimant-Third Party Plaintiff-
Appellee,

MST PROPERTIES LLC,
an Alabama corporation,
ROBERT HOLLAND,

an individual,
RANDY MOORE,
an individual,
MIKE THOUIN,
an individual,
DAVID J. COTHRAN,
as Administrator for the Estate of Aimee Cothran,
dec.,
DONALD RAY SANDERSON,
as Administrator for the Estate of Virginia Marie
Sanderson, dec.,
COLEEN MCKENNA WHORTON,
an individual,

Defendants-Appellees,

BRITTON-GALLAGHER & ASSOCIATES, INC., et al.,

Third Party Defendant.

———————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 5:16-cv-00949-AKK

———————————

Before JILL PRYOR, LUCK, and BRASHER, Circuit Judges.

JILL PRYOR, Circuit Judge:

Coleen McKenna Whorton, Aimee Cothran, and Virginia Marie Sanderson suffered catastrophic injuries from a pyrotechnic explosion at their workplace. Cothran and Sanderson died of their injuries. Their representatives and Whorton (the "Employees") sued their employer, Ultratec Special Effects HSV, Inc. ("Ultratec HSV"), its parent company, Ultratec Special Effects, Inc. ("Ultratec"), Ultratec's employee, Mike Thouin, and an associated business called MST Properties, LLC ("MST"). The Ultratec entities' insurer, James River Insurance Company, then filed this declaratory judgment action, asking the district court to determine the scope of James River's obligations, if any, to defend and indemnify the claims in the underlying lawsuit. The parties filed cross-motions for summary judgment, and the district court stayed the duty to indemnify claim and granted summary judgment in Ultratec's favor on the duty to defend claim, concluding that James River had a duty to defend Ultratec, as well as Thouin, and MST. James River appealed. After careful review, and with the benefit of oral argument, we affirm.

## I.    BACKGROUND

Ultratec HSV and Ultratec operate the Alabama pyrotechnics plant that was the site of the catastrophic explosion that killed two of the Employees and severely injured the third. The

Employees are pursuing their tort claims in ongoing state court litigation against Ultratec HSV, Ultratec, Thouin, MST, and several other entities. James River currently is defending Ultratec, Thouin, and MST (the "Insureds") against the claims and paying litigation costs, subject to a reservation of rights.

Although there remain factual issues pertinent to James River's obligations for the state court to resolve—like whether Ultratec and its wholly-owned subsidiary Ultratec HSV are separate entities—for this appeal the parties agree that the Employees were injured in the course and scope of their employment and that only one company employed them: Ultratec HSV.[1] Ultratec HSV carried a Commercial General Liability insurance policy (the "Policy") issued by James River that listed both Ultratec companies as named insureds. Thouin is covered by the Policy because he is an Ultratec employee and not a co-employee of the Ultratec HSV Employees. For purposes of this appeal, we assume without deciding that MST is an additional named insured under the Policy.[2]

---

[1] Ultratec has argued in state court that it and Ultratec HSV are a "single employer group" for workers' compensation purposes. *Ex parte Ultratec Special Effects, Inc.*, 296 So. 3d 801, 805 (Ala. 2019). The state court found that there was an "abundance of disputed facts" as to whether they are separate entities and denied Ultratec's petition for immunity under the Workers' Compensation Act. *Id.* at 813.

[2] The parties dispute whether MST is an additional insured under the Policy, but this issue is not before us on appeal. Relevant on appeal is that fact that James River is defending MST in the underlying action under a reservation of rights and named it as a defendant here.

20-11568                Opinion of the Court                5

The Policy provided commercial liability coverage for certain claims involving an occurrence of bodily injury. The Policy limited coverage through an "Employer's Liability Exclusion" (the "Exclusion"). The Exclusion read: "This insurance does not apply to any claim, suit, cost or expense arising out of 'bodily injury' to . . . [a]ny employee of any Insured arising out of and in the course of . . . [e]mployment by any insured[] or . . . [p]erforming duties related to the conduct of any insured's business." Doc. 1-4 at 66.[3] The parties agree the Exclusion means that the Policy does not cover the Employees' claims against Ultratec HSV. They disagree about whether the Exclusion excludes coverage for the Employees' claims against the Insureds.

The Policy also contained a separation of insureds provision. Such provisions are also known as severability of interests provisions or severability clauses. The provision at issue in this case (the "Separation of Insureds Provision") stated: "[T]his insurance applies . . . [a]s if each Named Insured were the only Named Insured; and . . . [s]eparately to each insured against whom claim is made or 'suit' is brought." *Id.* at 17.

This case turns on the interpretation of these two provisions, the Exclusion and the Separation of Insureds Provision.

James River, naming the Insureds and the Employees as defendants, sought a declaratory judgment that it had neither a duty

---

[3] "Doc." numbers refer to district court docket entries.

to defend nor a duty to indemnify the Insureds in the underlying action because of the Exclusion. The Insureds and the Employees (collectively, the "Defendants") responded by asking the district court to declare that James River had a duty to defend. The parties filed cross-motions for summary judgment. When the district court read the Exclusion in conjunction with the Separation of Insureds Provision, it concluded that the Exclusion did not exclude coverage for the Employees' claims against the Insureds, so James River had a duty to defend. The court granted the Defendants' motion for summary judgment, denied James River's, and ordered James River to continue defending the Insureds. The district court did not address the duty to indemnify at this stage of the case, staying the claim because it was not ripe for adjudication until liability was determined in the underlying state court action. James River now appeals the district court's interlocutory ruling.

## II.    STANDARD OF REVIEW

We review *de novo* a district court's rulings on cross-motions for summary judgment, and we view the facts in the light most favorable to the nonmoving party on each motion. *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012). Summary judgment is appropriate when a movant shows that there is "no genuine dispute as to any material fact," such that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial." *Dietz v. Smithkline Beecham*

20-11568                 Opinion of the Court                 7

*Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). If the nonmovant's evidence is "not significantly probative," summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). A genuine dispute of material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252.

## III.    DISCUSSION

The parties do not contest our jurisdiction, but because we have an independent duty to ensure that we have jurisdiction, we begin our discussion with an examination of the basis for our jurisdiction over this interlocutory appeal from a declaratory judgment. Then we address the merits of whether James River has a duty to defend. We review Alabama's contract interpretation principles and case law before applying that law to the insurance policy before us.[4] After doing so, we affirm the district court's grant of summary judgment to the Defendants in the declaratory judgment action and hold that James River has a duty to defend the Insureds: Ultratec, MST, and Thouin.

---

[4] There is no dispute that Alabama law governs our interpretation of the insurance contract in this case. Although James River argued below that Ohio law applied, it now looks to Alabama law and thus has waived any argument that another state's law applies.

### A.  We Have Jurisdiction over This Appeal Despite Its Lack of Finality Because of Its Injunctive Qualities.

We are obligated to review *sua sponte* whether we have jurisdiction. *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814, 818 (11th Cir. 2010). We do so now.

The order before us on appeal is nonfinal and interlocutory because James River's request for a declaratory judgment on the duty to indemnify remains pending before the district court. Ordinarily, we have jurisdiction only over final decisions, those that "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (internal quotation marks omitted); 28 U.S.C. § 1291. But insurers often seek declaratory judgments on their duty to defend and their duty to indemnify at the same time, before the duty to indemnify becomes ripe. *See, e.g.*, *Hartford Cas. Ins. Co. v. Merch. & Farmers Bank*, 928 So. 2d 1006, 1013 (Ala. 2005).[5] Recognizing that the duty to indemnify cannot be

---

[5] The duty to defend—to pay the insured's litigation costs in the underlying action—is broader than the duty to indemnify—to cover the damages ultimately awarded against the insured. *See Ladner & Co. v. S. Guar. Ins. Co.*, 347 So. 2d 100, 102 (Ala. 1977). Under Alabama law, the duty to defend is determined primarily on the allegations in the complaint in the underlying action against the insured. *Hartford Cas. Ins. Co.*, 928 So. 2d at 1009. But often a court can only determine whether there is coverage under the insurance policy—and thus a duty to indemnify—based on facts adduced at the trial of the underlying action. *Id.* at 1013. And there will be nothing to indemnify unless and

20-11568                Opinion of the Court                9

determined at a "preliminary stage in the proceedings," district courts in our circuit have declined to address the duty to indemnify when determining whether there is a duty to defend. *Pa. Nat'l Mut. Cas. Ins. Co. v. Hethcoat & Davis, Inc.*, 339 F. Supp. 3d 1248, 1256–58 (N.D. Ala. 2017).[6] Here, the district court stayed its decision on the duty to indemnify and addressed only the duty to defend. Thus, we must determine whether we have jurisdiction to review this nonfinal order.

We have jurisdiction to review nonfinal orders in certain circumstances, including, as relevant here, when the nonfinal order grants an injunction. 28 U.S.C. § 1292(a)(1). We may review orders that do not expressly grant injunctions when they have certain qualities of injunctions that make them immediately appealable—for example, when the order is directed to a party, is enforceable by contempt, and provides relief on the merits. 16 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3922 (3d ed. 1977).

---

until damages are assessed against the insured in that action. *See Ladner*, 347 So. 2d at 104 (declining to decide whether the insurer had a duty to indemnify because the plaintiffs in the underlying lawsuit could change the theory of liability and obtain judgment on a claim covered by the policy).

[6] District courts in our circuit have withheld ruling on the duty to indemnify in different ways. *See, e.g.*, *Am. Nat'l Prop. & Cas. Co. v. Gulf Coast Aerial, LLC*, 533 F. Supp. 3d 1110, 1113 (S.D. Ala. 2021) (staying decision on the duty to indemnify claim); *Auto-Owners Ins. Co. v. Toole*, 947 F. Supp. 1557, 1565–67 (M.D. Ala. 1996) (dismissing without prejudice the duty to indemnify claim); *Guar. Nat'l Ins. Co. v. Beeline Stores, Inc.*, 945 F. Supp. 1510, 1514–16 (M.D. Ala. 1996) (denying without prejudice the duty to indemnify claim).

Sometimes these injunctive qualities are present in declaratory judgments. *Id.* Such declaratory judgments have "the practical effect of granting or denying injunctions," and thus we are permitted to review them on interlocutory appeal. *Abbott v. Perez*, 138 S. Ct. 2305, 2319 (2018) (internal quotation marks omitted).

In this case, the district court not only denied James River a declaratory judgment that it had no duty to defend; it granted summary judgment on the Insureds' counterclaim for a declaratory judgment in their favor. Previously, in a very similar context, we held that the district court's order granting summary judgment on the insureds' counterclaim was an appealable injunction. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Sahlen*, 999 F.2d 1532, 1535 (11th Cir. 1993). We said, "During the pendency of this case, the district court granted a motion by the Insureds for partial summary judgment and held that National Union was required to pay the Insureds' defense costs in the underlying suits until its claim for rescission was resolved. We find that this order of the district court constituted an injunction for purposes of § 1292(a)(1)." *Id.*

It is true that the district court's order in *Sahlen* was more explicit in stating that the insurer "was required to pay the Insureds' defense costs." *Id.* But we find *Sahlen* instructive despite the difference in wording because the district court here likewise granted summary judgment to the Insureds on their counterclaim for a declaratory judgment, thereby requiring James River to pay their defense costs. The Insureds sought a declaratory judgment and other appropriate relief, which includes injunctive relief. By entering an

order declaring that the Insureds have a right to be defended by James River, the district court made the declaratory judgment akin to an injunction.[7] *See* Wright & Miller, Fed. Prac. & Proc. § 3922. We therefore have jurisdiction to entertain this appeal from the order on the duty to defend even though it does not provide complete relief because the duty to indemnify claim remains pending before the district court.

### B. James River Has a Duty to Defend Under the Policy Because the Exclusion Is Ambiguous.

The Employer's Liability Exclusion in the Policy excluded coverage for "any claim, suit, cost or expense arising out of 'bodily injury' to . . . *[a]ny employee of any Insured* arising out of and in the course of . . . [e]mployment by any insured[] or . . . [p]erforming duties related to the conduct of any insured's business." Doc. 1-4 at 66 (emphasis added). James River argues that the Exclusion unambiguously applies equally to all the insureds—Ultratec HSV, Ultratec, MST, and Thouin. Because the Employees' claims arose out of bodily injury they suffered while employed by *one of* the insureds ("any Insured"), James River argues, none of the Employees

---

[7] James River points out that the order is not expressly enforceable by contempt; however, Wright & Miller sets out *examples* of characteristics that indicate injunctive qualities rather than absolute requirements. *See* Wright & Miller, Fed. Prac. & Proc. § 3922. And we doubt that, should James River fail to comply with the order by not paying defense costs, there would be no consequences. Indeed, in that event James River likely would be subject to contempt proceedings, as the parties acknowledged during oral argument.

is covered under the Policy. The Defendants respond that the Exclusion is ambiguous because the phrase "any Insured" could also be interpreted to apply only to the Employees' claims against their employer, Ultratec HSV. In other words, the Exclusion could exclude coverage for claims that an Ultratec HSV employee brings against her employer, Ultratec HSV, but not affect coverage for claims an Ultratec HSV employee brings against another insured who is not her employer. Under this interpretation, the Defendants argue, the Insureds, all non-employers, are covered under the Policy for the Employees' claims against them, and James River should have a duty to defend them.

The Defendants further contend that, even if the Exclusion were unambiguous on its own, it must be interpreted in light of the Separation of Insureds Provision. The Separation of Insureds Provision directs that the Policy be read "[a]s if each Named Insured were the only Named Insured; and . . . [s]eparately to each insured against whom claim is made or 'suit' is brought." *Id.* at 17. According to the Defendants, this provision means that we must read the Policy and the Exclusion separately for each insured, as if that insured were the only insured under the Policy. Read this way, the Exclusion bars coverage only when the insured is sued by its own employee; when it is sued by another insured's employee, coverage exists under the Policy. Because Ultratec is being sued by another insured's employees and not its own, the Defendants say, James River has a duty to defend it in the underlying action. The same goes for MST and Thouin.

20-11568                Opinion of the Court                13

We now turn to Alabama caselaw to interpret the Policy.

1. *Principles of Alabama Law Regarding Ambiguity in the Interpretation of Insurance Contracts*

Alabama caselaw obliges us to conclude that James River has a duty to defend the Insureds. Insurance policies are contracts, and "like other cont[r]acts, [they are] governed by the general rules of contracts." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001). Courts must construe them to give effect to the intention of the parties. *Id.* To glean the parties' intent, we examine "more than an isolated sentence or term"; instead, we "read each phrase in the context of all other provisions." *Id.* (internal quotation marks omitted).

If a policy's terms are unambiguous, the court must enforce the policy as written. *Johnson v. Allstate Ins. Co.*, 505 So. 2d 362, 365 (Ala. 1987). But when there is doubt about whether the policy provides coverage, we must construe the policy language for the benefit of the insured. *St. Paul Mercury Ins. Co. v. Chilton–Shelby Mental Health Ctr.*, 595 So. 2d 1375, 1377 (Ala. 1992). A policy term is ambiguous only if, when applying the term's ordinary meaning, it is reasonably susceptible to different constructions. *Safeway Ins. Co. of Ala. v. Herrera*, 912 So. 2d 1140, 1144 (Ala. 2005). In determining whether a term is ambiguous, we cannot consider the term in isolation; we must consider the policy as a whole. *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 309 (Ala. 1999).

In this case, we must decide whether the Exclusion unambiguously excludes coverage under the Policy. The insurer has the burden of establishing that an exclusion excludes coverage for a claim. *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001). Exclusions must be interpreted "as narrowly as possible in order to provide maximum coverage for the insured, and must be construed most strongly against the company that drew the policy and issued it." *Nationwide Mut. Ins. Co. v. Thomas*, 103 So. 3d 795, 805 (Ala. 2012) (internal quotation marks omitted).

The Alabama Supreme Court has twice considered an exclusion using the term "any insured" and deemed it ambiguous on its face. *Transp. Indem. Co. v. Wyatt*, 417 So. 2d 568, 571 (Ala. 1982); *Wilson v. State Farm Mut. Auto. Ins. Co.*, 540 So. 2d 749, 752 (Ala. 1989).[8] In addition, Alabama caselaw applies a minority rule for separation of insureds provisions, interpreting them to mean that the whole policy, including exclusions, should be read as if each insured has its own separate insurance. *U.S. Fire Ins. Co. v. McCormick*, 243 So. 2d 367, 375 (Ala. 1970) (superseded by statute on other grounds); *see also Wyatt*, 417 So. 2d at 570. Applying Alabama law and reading the Separation of Insureds Provision with

---

[8] *Wilson* interpreted an exclusion that used the phrase "*an* insured." *Wilson*, 540 So. 2d at 750–51 (emphasis added). But because "'an insured' unambiguously means 'any insured,'" according to the Alabama Supreme Court, we equate *Wilson*'s interpretation of "an insured" with *Wyatt*'s interpretation of "any insured." *See State Farm Fire & Cas. Co. v. Davis*, 612 So. 2d 458, 466 (Ala. 1993) (internal quotation marks omitted).

20-11568                Opinion of the Court                15

the Exclusion, we conclude that the Exclusion is ambiguous and therefore must be construed in favor of the insured.

### 2. *The Exclusion's "Any Insured" Language Is Ambiguous.*

The Alabama Supreme Court's *Wyatt* and *Wilson* decisions held that the phrase "any insured" was ambiguous when used in an employer's liability exclusion. Wyatt was injured in the scope of his employment and sued his employer and its executive officers for his injuries. *Wyatt*, 417 So. 2d at 568. The employer corporation and the officers were insured by the same commercial general liability policy, which included an employer's liability exclusion that read: "This insurance does not apply . . . [t]o any OCCURRENCE which caused BODILY INJURY to any employee of *any INSURED* arising out of or in the course of his employment by *any INSURED*." *Id.* at 569 (emphases added). The policy defined both the corporation and its officers as insureds. *Id.* at 568. The parties agreed that Wyatt was an employee of the corporation but not of the officers. *Id.* at 570. When the officers demanded that the insurer defend them against Wyatt's lawsuit, the insurer denied coverage. *Id.* at 568–69. It filed a declaratory judgment action in which it argued that "any insured" as used in the exclusion unambiguously meant that the policy covered claims against neither the corporation nor its officers when an employee was injured while working for the corporation, and thus the insurer had no duty to defend against Wyatt's claims. *Id.* at 570.

The trial court disagreed and concluded that "the term 'any INSURED' is ambiguous on its face" because it could refer to "any

one of the insureds" instead of all the insureds. *Id.* The Alabama Supreme Court agreed that the term was ambiguous because it "could be interpreted either to mean only singularly 'any one of the insureds' or could apply collectively to the whole group of insureds." *Id.* at 571. Because it is "axiomatic" that courts must construe ambiguities in favor of coverage for the insured, the Court held that the insurer had a duty to defend the officers. *Id.* (internal quotation marks omitted).

In *Wilson* the Alabama Supreme Court found similar language to be ambiguous. There, the Court interpreted an employer's liability exclusion that excluded coverage for any bodily injury to "any employee of *an insured* " arising from the employee's employment. *Wilson*, 540 So. 2d at 750–51 (emphasis added). The ambiguity in the exclusion arose because "there are multiple insureds and the injured party is an employee of one or some, but not all." *Id.* at 752. Construing the ambiguity in favor of the insured, the Court held that the insurer had a duty to defend. *Id.*

These cases compel us to conclude that the Exclusion in the Policy is ambiguous. The Exclusion is nearly identical to the ambiguous exclusion in *Wyatt*. In *Wyatt* and *Wilson*, the policies covered multiple insureds, and the injured parties were not employees of all the insureds. *Wyatt*, 417 So. 2d at 568; *Wilson*, 540 So. 2d at 751. Here, similarly, the Policy covers multiple insureds—Ultratec HSV, Ultratec, MST, and Thouin—and the injured Employees were employed by only one insured, Ultratec HSV. *Wyatt* and

*Wilson* found ambiguity in employer's liability exclusions that included the term "any insured" when injured employees sued an insured who was not their employer. *Wilson*, 540 So. 2d at 751; *Wyatt*, 417 So. 2d at 572. In this case, the same ambiguity exists because the Employees sued insureds who were not their employer.[9]

According to *Wyatt*, "any insured" can be interpreted singularly as "any one of the insureds," or collectively as "the whole group of insureds." *See Wyatt*, 417 So. 2d at 571. Reading "any insured" singularly means that the Policy does not cover any claim arising out of bodily injury to any employees of Ultratec arising out of their employment with Ultratec. The Employees were not employed by Ultratec, so the Exclusion does not bar coverage for their claims against Ultratec for employment-related bodily injury. Under this reading, James River would have a duty to defend Ultratec.

Reading "any insured" collectively produces the opposite result: the Policy excludes coverage for any claim for bodily injury to any employees of any of the four insureds, Ultratec, Ultratec HSV, MST, or Thouin, arising out of the course of their employment. Because the Employees were employed by one of those insureds, the Exclusion applies to their claims against all the insureds. Under this reading, James River would have no duty to defend.

---

[9] It is undisputed that the Exclusion excludes coverage under the Policy for the Employees' claims against their employer, Ultratec HSV, and therefore James River has no duty to defend Ultratec HSV.

The Exclusion is ambiguous under Alabama law because it is reasonably open to either interpretation. We must construe the ambiguous provision in favor of coverage. Therefore, we adopt the first interpretation and conclude that the Exclusion does not exclude coverage, and thus James River has a duty to defend the Insureds.

James River argues that *Wyatt* is inapposite because the policy in that case featured an automobile exclusion that contributed to the employer's liability exclusion's ambiguity. But in *Wyatt* the Alabama Supreme Court determined that the employer's liability exclusion was ambiguous on its own; the Court's analysis ignored the automobile exclusion. *Wyatt*, 417 So. 2d at 571. We are thus obliged to follow *Wyatt* on this question of state law.[10]

In this case, the district court concluded that the Exclusion was unambiguous on its own but ambiguous when read together with the Separation of Insureds Provision. As we explain in the next subsection, we agree with the district court that the provisions, read together, are ambiguous. Although we do not agree with the district court that the Exclusion is unambiguous on its own, we can affirm the court's ruling on any ground that is supported by the record. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

---

[10] We are bound by the decisions of the Alabama Supreme Court on questions of Alabama law. *See Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 (11th Cir. 2020) (citing 28 U.S.C. § 1652).

3.      *The Separation of Insureds Provision Adds Ambiguity.*

Regardless of whether the Exclusion taken on its own is ambiguous, we agree with the district court that the Exclusion does not unambiguously apply when we interpret it in conjunction with the Separation of Insureds Provision, also known as a severability of interests provision. James River argues that we should not read the provisions together. The district court disagreed, concluding that the Alabama Supreme Court's *McCormick* and *Wyatt* decisions required it to read the Policy and Exclusion as if each Insured had its own, separate policy. Based on this reading, the court determined that the Exclusion did not exclude coverage, and therefore James River had a duty to defend the Insureds. We agree.

*McCormick* established that Alabama courts read employer's liability exclusions and severability of interests provisions together.[11] In that case, as in this one, injured employees sued a

---

[11] James River contends that the district court erred in assuming Alabama would follow the minority rule for interpreting a severability of interests provision and an exclusion excluding coverage for "any insured." True, most courts that have addressed the issue have concluded that a separation of insureds provision in a general policy does not nullify an exclusion's "any insured" language contained in an endorsement that changes the general policy. *See* Doc. 169 at 17 n.17 (collecting cases). But other courts have concluded otherwise, holding that a separation of insureds provision requires the whole policy, including exclusions and other endorsements, to be read as if each individual seeking coverage is the only insured. *See id.* at 17–18. The Alabama

defendant who was not their employer but was insured under the same policy as their employer. *McCormick*, 243 So. 2d at 369. The policy included an employer's liability exclusion and a separation of insureds provision, styled there as a severability of interests provision. *Id.* at 373. The provision read: "Severability of Interests. The term 'the insured' is used severally and not collectively." *Id.* The Alabama Supreme Court concluded that a severability of interests provision means that a court must consider "each insured separately, independently of every other insured." *Id.* at 375. Using that provision to interpret the exclusion, the Court stated that "the unqualified word 'insured'" in the exclusion at issue "means only the person claiming coverage." *Id.*

*Wyatt* followed *McCormick*, finding the severability provisions in the two cases to be similar. *Wyatt*, 417 So. 2d at 571. Because *McCormick* controlled, the *Wyatt* court read the employer's liability exclusion and the severability of interests provision together, so the word "insured" referred only to the person or entity claiming coverage. *Id.* Having already determined that the exclusion was ambiguous, the Court concluded that reading the provisions together "also creates ambiguity in determining the extent of

---

Supreme Court chose to follow this minority rule in *McCormick*, where it acknowledged the "decided split of authority" before concluding that the severability of interests provision applied to the exclusion. *McCormick*, 243 So. 2d at 373, 375. The district court did not assume Alabama courts would follow the minority rule; it merely applied the rule they had already adopted.

coverage." *Id.* Applying Alabama law, we, too, read the provisions together.

The Separation of Insureds Provision in the Policy is similar to the severability of interests provision in *McCormick*. It reads: "[T]his insurance applies . . . [a]s if each Named Insured were the only Named Insured; and . . . [s]eparately to each insured against whom claim is made or 'suit' is brought." Doc. 1-4 at 17. As with the policies in the cases discussed above, this means that each named insured has a separate insurance policy; one insured's conduct will not affect another insured's coverage. Thus, we read the Policy as if it applies separately to Ultratec HSV, Ultratec, MST, and Thouin—as if each one is the only named insured. Applying this reading to the Exclusion, we conclude that the Policy does not apply to bodily injury to an employee of Ultratec arising out of and in the course of employment by Ultratec. But the Exclusion does not exclude coverage for Ultratec in this case because the Employees were not Ultratec's employees. James River therefore has a duty to defend Ultratec. Substituting Thouin or MST for Ultratec leads to the same conclusion: James River has a duty to defend them.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment in part in favor of the Defendants and holding that James River has a duty to defend the Insureds: Ultratec, MST, and Thouin.

22                    Opinion of the Court                    20-11568

AFFIRMED.